Argued November 30, decided December 14, 1909.

## BUCHANAN *v.* TENNANT.

[105 Pac. 547.]

TAXATION—TAX SALE—PURCHASE BY COUNTY—RIGHT ACQUIRED.

1. Where a county bids in land at a tax sale under Section 3122, B. & C. Comp., it acquires "all the estate or interest therein of the owners" subject to redemption within the time provided by law at the time of the sale, and, until the absolute title is divested and passes to the county, the land is assessable to the owner.

TAXATION—TAX SALE—PURCHASE BY COUNTY—SUBSEQUENT TAXES.

2. Where land is bid in by a county at a tax sale, the purchaser at a subsequent sheriff's sale for taxes, obtains only a right to redeem from the county, and the county does not thereby lose its interest acquired by the previous sale.

TAXATION—TAX SALE—PURCHASE BY COUNTY—REDEMPTION.

3. Where land was bid in by a county at a tax sale, and the time for redemption had expired, and title had vested in the county, the owner's attorney by paying the aggregate amount of delinquent taxes to the county clerk and taking his receipt, and receiving from him the several certificates

of sale which had been issued to the county by the sheriff, did not effect a recovery of title or redemption of the property, or remove from the record any apparent cloud on the title caused by the record of the sales.

From Douglas: JAMES W. HAMILTON, Judge.

Statement by MR. JUSTICE SLATER.

This is a suit for the specific performance of a written contract between J. A. Buchanan, who is an attorney at law, residing at Roseburg, in Douglas County, and the defendant, Phoebe Tennant, who resides in the state of Colorado. It recites that defendant is the owner of certain lands in that county, which had been sold for taxes, and that a deed had been issued and recorded and other conveyances made. By its terms defendant employed plaintiff to recover said lands by suit or otherwise, and as a consideration therefor agreed to convey to plaintiff an undivided one-half interest in the lands, provided he recovered the same, by suit or otherwise, and removed the cloud cast on the title by such sales, but, if he failed to regain the land and remove the cloud, then plaintiff was to receive nothing for his work or expense. Defendant agreed to advance $5 for filing the complaint, and plaintiff accepted the employment and agreed to prosecute the case to final determination. Plaintiff alleges that he has fully performed all his part of the contract.

The answer admits that defendant is the owner of the lands, and that she made the contract with plaintiff, but denies all other material averments of the complaint. Three further and separate defenses are averred, in substance as follows: (1) That, before plaintiff had taken any proceedings to set aside and cancel the tax liens, defendant, through her duly authorized agent, rescinded the contract on account of plaintiff's negligence and failure to comply with the terms thereof, and directed him to proceed no further; that thereupon defendant's agent proceeded to clear the title, and contracted with J. F. Baker and G. R. Childs to purchase of them whatever

interest they had under a tax sale to them of the defendant's land, and that afterwards she received their deeds of conveyance, and placed them on record; that, notwithstanding defendant's notice of rescission, plaintiff on or about October 9, 1906, began a suit in Douglas County, in the name of defendant and against Baker and Childs, to quiet title to the property in question; that at the time plaintiff knew that defendant had purchased the title of said parties, and would, in time, receive conveyances from them; and that at the time said suit was filed there were, in fact, no liens against defendant's property, on account of tax sales or otherwise. (2) Rescission, based on misrepresentation by plaintiff to defendant, as to a material fact, which induced her to enter into the contract. (3) That the contract is champertous, and therefore illegal and void.

The reply admits that plaintiff began a suit in defendant's name on October 8, 1906, against Baker and Childs to quiet defendant's title, but avers that Douglas County, because of several tax sales made to it, prior to the sale to Baker and Childs, was also made a defendant therein. Otherwise the reply put at issue all of the new matter of the answer. Upon a trial being had, the court found with the defendant, as to a question of fact, that before any suit was commenced by plaintiff, in pursuance with the contract, defendant, through her agent, notified plaintiff not to commence the suit; that the matter was in process of settlement. As to the law, it was held that, after making the contract with plaintiff, it was within the power of defendant to settle the controversy in relation to which plaintiff had been retained as attorney, and "that in the event of such settlement made in good faith without the intent of defrauding plaintiff, plaintiff is not entitled to a decree of specific performance as for a contract the terms of which have been performed on his part." A decree was entered, dismissing the complaint, and grant-

ing defendants costs and disbursements, from which plaintiff appealed.                        AFFIRMED.

For appellant there was a brief and an oral argument by *Mr. John A. Buchanan.*

For respondent there was a brief over the names of *Messrs. Fullerton & Orcutt* with an oral argument by *Mr. Albert N. Orcutt.*

MR. JUSTICE SLATER delivered the opinion of the court.

1. Plaintiff and his counsel have earnestly and ably urged upon us that the trial court erred, both upon the facts and the law. But, assuming that the law is as he contends, and that he is entitled to the remedy invoked when he has shown by competent testimony that he has fully performed the terms of the contract, yet we are compelled by the record to find that he has failed to make his case. He testifies that, when the contract was made, the land had been sold for delinquent taxes, and was bid in by the county five different times prior to the sale to Baker and Childs. These sales occurred as follows: January 2, 1895, for the taxes of 1893; December 17, 1895, for the taxes of 1894; February 17, 1900, for the taxes of 1898; January 26, 1901, for the taxes of 1899; and February 24, 1902, for the taxes of 1900. The sale to Baker and Childs took place on January 5, 1903, for the taxes of 1901. It was the record of these sales that plaintiff says he was to cause to be canceled by suit or otherwise, and he contends that it was not until after his suit had been brought that the defendant's agent unwarrantedly interfered, made the agreement with Baker and Childs, and notified him not to take any further proceedings, because of the claim that the matter had been settled. He also contends that defendant's agreement with those two persons did not remove the entire cause of suit, but left the cause against the county unsettled and still

pending, and further testifies that afterwards, on October 26, 1906, he, as attorney for the defendant, went to the county clerk's office, and paid to that officer the sum of $49.29 in full for the delinquent taxes due Douglas County for the five years for which the land had been sold, and he exhibited a written receipt of the county clerk to that effect. At the time of such payment that officer also delivered to plaintiff the sheriff's certificates of sale, which are in evidence, but they are unaccompanied by any written transfer or release, by indorsement or otherwise, of the county's interest in the land by virtue of these sales. After making this payment, plaintiff, considering that the defendant's record title to the land had been freed of all adverse claims, dismissed the suit, as he considered it of no further utility.

The defendant seems to rely upon the claim that, when the premises were subsequently sold to Baker and Childs for the taxes assessed to her for the year 1901, the county in some manner lost all its interest acquired by the previous sales, and such rights became vested in the new purchasers, and that, when she received their deeds of conveyance, all tax titles had become centered in her. But the theories of both parties are at fault. When the county bid in this land, it acquired "all the estate or interest therein of the owners" (Section 3122, B. & C. Comp.), subject to redemption within the time provided by law at the time of the sale, the same as if it had been purchased by individuals; and, until the absolute title had been divested and had passed to the county, by virtue of the act of 1901 (Section 3132, B. & C. Comp.), such land was assessable to the owner: *Berger* v. *Multnomah County,* 45 Or. 402 (78 Pac. 224.)

2. Baker and Childs by purchasing at a subsequent sheriff's sale for tax levied and assessed prior to July 1, 1901, obtained only such title as the defendant had at the time of the assessment and levy (45 Or. 407: 78 Pac.

224) ; that is, a right to redeem from the county. The right of the county, therefore, was the dominant and superior right, not only in respect to the claim of the defendant, but of Baker and Childs as well.

3. By Section 3132, B. & C. Comp., the land was redeemable at any time before July 1, 1901, for sales made prior thereto, but, if not redeemed within that time, then the title to the land vested in the county without issuance of deed or other formality, if the assessment, levy, and sale were valid. No redemption was made by defendant, or by any one in her behalf, or by Baker and Childs, before that date, and it has not been suggested by any one who is a party to this suit that any of these tax sales were for any reason void. We must assume, therefore, that at least an apparent record title passed to the county on July 1, 1901. Plaintiff seems to think that by paying to the county clerk on October 26, 1906, as defendant's agent, the aggregate amount of these delinquent taxes, taking his receipt and receiving from him the several certificates of sale, which had been issued to the county by the sheriff, he thereby recovered the title, or redeemed the property, and removed from the record any apparent cloud cast upon the title by the record of these sales, for he testifies that he thereupon dismissed the pending suit against the county, without taking any decree, considering that it could serve no further purpose. But no authority arising either from statute or from any order of the county court is shown to be possessed by the clerk to thus deal with the property of the county, and, if some authority did exist, his act of handing over the sheriff's certificates could not, in any event, transfer or release a title in realty, which by the plain words of the statute had become vested and was absolute. It would thus appear, not only that plaintiff has not fully performed the terms of his contract, without which he can not recover, but also that the defendant, contrary to her

and her agent's formerly self-conceived notions, had, and still has, much need of the services of the plaintiff, or of some other attorney, to perfect the title to the premises. For these reasons, the decree must be affirmed.

AFFIRMED.